Hon. Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BELMAIN PLACE CONDOMINIUM
OWNERS ASSOCIATION, a Washington
non-profit corporation,

Plaintiff,

v.

THE AMERICAN INSURANCE
COMPANY, a foreign insurance company,

Defendant.

No. 2:19-cv-00156-MJP

DEFENDANT'S RESPONSE TO
PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT

**Noted on Motion Calendar for:**
**Friday, August 2, 2019**
**Without Oral Argument**

DEF.'S RESPONSE TO PL.'S MOTION FOR
PARTIAL SUMM. J. (No. 2:19-cv-00156-MJP)

# TABLE OF CONTENTS

I.      INTRODUCTION AND RELIEF REQUESTED ..................................................1

II.     FACTUAL BACKGROUND ...........................................................................2

        A.    The Property Was Built in 1979 and Has Seen Repairs and
              Renovations Since...........................................................................2

        B.    Belmain Is Aware of Limited Water Staining and Condensation in
              2001................................................................................................2

        C.    AIC Provided Property Insurance Coverage from 2008 to 2016.................3

        D.    Belmain Claims Water Intrusion Damage at the Property in 2018;
              Investigation Reveals Wear-and-Tear and Minimal Intrusion and
              Decay .............................................................................................6

        E.    AIC Denies Coverage for Belmain's Claim and Belmain Sues .................7

III.    ISSUE PRESENTED ..................................................................................9

IV.     EVIDENCE RELIED UPON ........................................................................9

V.      AUTHORITY AND ARGUMENT .................................................................9

        A.    Legal Standard ................................................................................9

              1.    Summary Judgment Standard .......................................................9

              2.    Interpreting All-Risk Insurance Policies.......................................10

        B.    Under Washington Law, the Policy Provides that Damage and Loss
              Is Not Covered if the Efficient Proximate Cause Is Faulty,
              Inadequate or Defective Design, Workmanship, Repair,
              Construction, Maintenance, or the Like......................................................11

        C.    Belmain's Interpretation of the Defective Design or Workmanship
              Exclusion Is Belied by the Text and Structure of the Policies and
              the Parties' Reasonable Expectations ........................................................16

        D.    Applying the Policies' Definition of "Covered Cause of Loss,"
              Water Intrusion Is Not a Covered if Caused by Faulty, Inadequate
              or Defective Design, Workmanship, Repair, Construction,
              Maintenance, or the Like .......................................................................19

        E.    Belmain's Estoppel Theory of Coverage Fails as a Factual and
              Legal Matter.....................................................................................20

        F.    Belmain's Attempts to Dismiss AIC's Coverage Defense Based on
              the Decay, Deterioration, and Latent Defect Exclusion Are
              Misconceived ....................................................................................22

DEF.'S RESPONSE TO PL.'S MOTION FOR
PARTIAL SUMM. J. (No. 2:19-cv-00156-MJP) – Page i

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1

G.      The Commencing Clause Bars the Requested Relief Here ........................23

H.      This Motion Is Premature and Cannot Resolve Whether Belmain Is
Entitled to Coverage for Water Intrusion as a Matter of Law ...................24

VI.     CONCLUSION.........................................................................................24

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Country Mut. Ins. Co.,*
   No. C14-0048JLR, 2015 WL 687399 (W.D. Wash. Feb. 18, 2015) ..................... passim

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) .....................................................9

*AXIS Surplus Ins. Co. v. Intracorp Real Estate, LLC,*
   No. C08-1278-JCC, 2009 WL 10676383 (W.D. Wash. Sept. 14, 2009)...........12, 16, 23

*Bosko v. Pitts & Still, Inc.,*
   75 Wash. 2d 856, 454 P.2d 229 (1969).........................................................................24

*Capelouto v. Valley Forge Ins. Co.,*
   98 Wash. App. 7, 990 P.2d 414 (1999)......................................................10, 11, 14, 19

*Churchill v. Factory Mut. Ins. Co.,*
   234 F. Supp. 2d 1182 (W.D. Wash. 2002)....................................................................17

*Dally Properties, LLC v. Truck Ins. Exch.,*
   No. C05-0254L, 2006 WL 1041932 (W.D. Wash. Apr. 5, 2006) ............................23, 24

*Ellis Court Apartments P'ship ex rel.*
   *Woodside Corp. v. State Farm Fire & Cas. Co.,*
   117 Wash. App. 807, 72 P.3d 1086 (2003)....................................................................23

*Findlay v. United Pac. Ins. Co.,*
   129 Wash. 2d 368, 917 P.2d 116 (1996)................................................................. passim

*Friedberg v. Chubb & Son, Inc.,*
   691 F.3d 948 (8th Cir. 2012) ........................................................................................16

*GCG Assocs. LP v. Am. Cas. Co. of Reading Pennsylvania,*
   No. C07-792BHS, 2008 WL 3542620 (W.D. Wash. Aug. 8, 2008) ..............................23

*Hayden v. Mut. of Enumclaw Ins. Co.,*
   141 Wash. 2d 55, 1 P.3d 1167 (2000)..................................................................2, 21, 22

*Industrial Bldg. Materials, Inc. v. Interchemical Corp.,*
   437 F.2d 1336 (9th Cir. 1970) ......................................................................................10

*Jinni Tech Ltd. v. Red.com, Inc.,*
   No. C17-0217JLR, 2017 WL 4758761 (W.D. Wash. Oct. 20, 2017)..............................22

*Kish v. Ins. Co. of N. Am.,*
   125 Wash. 2d 164, 883 P.2d 308 (1994)...................................................12, 16, 21, 23

DEF.'S RESPONSE TO PL.'S MOTION FOR
PARTIAL SUMM. J. (No. 2:19-cv-00156-MJP) – Page iii

LAW OFFICES OF
MᴄNAUL EBEL NAWROT & HELGREN ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

*McDonald v. State Farm Fire & Cas. Co.*,
  119 Wash. 2d 724, 837 P.2d 1000 (1992)....................................................18

*Overton v. Consol. Ins. Co.*,
  145 Wash. 2d 417, 38 P.3d 322 (2002).........................................10, 19, 20

*Safeco Ins. Co. of Am. v. Hirschmann*,
  112 Wash. 2d 621, 773 P.2d 413 (1989)..............................................12, 15

*Sunbreaker Condo. Ass'n v. Travelers Ins. Co.*,
  79 Wash. App. 368, 901 P.2d 1079 (1995)........................................ passim

*The Bedford, LLC v. Safeco Ins. Co. of Am.*,
  140 Wash. App. 1033, 2007 WL 2757271 (2007)........................................23

*Vision One, LLC v. Philadelphia Indem. Ins. Co.*,
  174 Wash.2d 501, 276 P.3d 300 (2012)............................................ passim

*Wright v. Safeco Ins. Co. of Am.*,
  124 Wash. App. 263, 109 P.3d 1 (2004)...................................10, 12, 13, 15

**Other Authorities**

RESTATEMENT (SECOND) OF CONTRACTS, § 203(a) (1981) ............................................2, 18

**Rules**

Fed. R. Civ. P. 56(c) ..........................................................................................9

Fed. R. Civ. P. 56(d) ........................................................................................24

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

# I. INTRODUCTION AND RELIEF REQUESTED

Defendant The American Insurance Company ("Defendant" or "AIC") respectfully requests that the Court deny the Motion for Partial Summary Judgment ("Motion") filed by Plaintiff Belmain Place Condominium Owners Association ("Plaintiff" or "Belmain"). Belmain argues that it is entitled to coverage as a matter of law under property insurance policies issued by AIC "for any water intrusion damage at [Belmain]'s property" "based on [AIC]'s admissions and the terms of [the] policies." Mot. at 2.[1] Belmain is not entitled to the requested relief.

Belmain's Motion fails for at least three separate reasons. First, under Washington law ignored by Belmain, the core issue here is one of efficient proximate cause. *See Vision One, LLC v. Philadelphia Indem. Ins. Co.*, 174 Wash.2d 501, 519-21, 276 P.3d 300 (2012). If faulty, inadequate, or defective design, workmanship, repair, construction, or maintenance is the efficient proximate cause of Belmain's claimed damages, then AIC's coverage denial was proper—notwithstanding Belmain's arguments about "ensuing" water intrusion. *See id.* Efficient proximate cause is an issue of fact improper for summary resolution. *Sunbreaker Condo. Ass'n v. Travelers Ins. Co.*, 79 Wash. App. 368, 380, 901 P.2d 1079 (1995).[2] For this reason alone, the Motion must be denied. *Infra* § V.B.

Second, Belmain's contract analysis is belied by the structure of the policies, the reasonable expectations of an insured, and cornerstone rules of contractual interpretation. The policies at issue here lay out an exclusion for losses arising from faulty, inadequate, or defective design, workmanship, repair, construction, maintenance, or the like. Nonetheless, Belmain's theory is that the policies should be read to effectively (and implicitly) nullify that exclusion where ordinary weather conditions cause damage. This is an "absurd" construction. *Vision One, LLC*, 174 Wash.2d at 516. Indeed, this construction

---

[1] To the extent Belmain seeks broader relief, the Motion should be denied for the additional reasons below.

[2] That said, Belmain appears to concede, at times, that "faulty, inadequate or defective" design," "workmanship," "repair," "construction," "maintenance," or the like is in fact the undisputed efficient proximate cause here. If so, the case may be ripe for summary resolution <u>in AIC's favor</u> on this issue.

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

offends the cardinal rule that an agreement should be interpreted to give effect to each

provision. RESTATEMENT (SECOND) OF CONTRACTS, § 203(a) (1981). *Infra* § V.C.

Third, Belmain is incorrect that AIC has "admitted" under Washington law that

other policy exclusions and defenses do not apply here. To the contrary, in its original

denial letter AIC laid out all of the reasons it asserts again here why coverage does not

apply. On these facts, AIC is not estopped from asserting any coverage defenses. *Hayden*

*v. Mut. of Enumclaw Ins. Co.*, 141 Wash. 2d 55, 63, 1 P.3d 1167 (2000).[3] This precludes

summary judgment because Belmain cannot obtain an order that "any water intrusion

damage at [Belmain]'s property" is covered without meeting its initial summary judgment

burden against AIC's other coverage defenses. *Infra* § V.E. The Motion must be denied.

## II. FACTUAL BACKGROUND

**A.    The Property Was Built in 1979 and Has Seen Repairs and Renovations Since**

This lawsuit arises from purported water intrusion into a condominium complex

known as "Belmain Place" (the "Property"). Dkt. 1; **Ex. 1** at 1.[4] The Property was built in

or around 1979 and consists of eight buildings and 40 units. **Ex. 2** at 1. Each building is a

two-story, wood framed structure over a crawl space with gable roofs covered by

composition shingles. *Id.* The exterior cladding is vinyl siding, the windows and sliding

glass doors are a mix of aluminum and vinyl framed assemblies from various eras. *Id.*

The Property has a history of repairs and renovations following the original

construction, including: (1) installing vinyl siding over original cedar panel and lap siding

in 2001, and (2) replacing aluminum framing with vinyl framing for windows. *Id.* at 2.

**B.    Belmain Is Aware of Limited Water Staining and Condensation in 2001**

Since at least 2001, Belmain has been aware of limited moisture staining damage

---

[3] Even if it could be argued otherwise, Belmain has plainly failed to meets its burden of demonstrating prejudice or bad faith here, which is necessary to establish estoppel. *See id.*; *Anderson v. Country Mut. Ins. Co.*, No. C14-0048JLR, 2015 WL 687399, at *9 (W.D. Wash. Feb. 18, 2015).

[4] Exhibits 1-5 referenced herein are attached to the contemporaneously filed Declaration of Curtis C. Isacke ("Isacke Decl."). Exhibits A-H referenced herein are attached to the Declaration of Zachary O. McIsaac in Support of Plaintiff's Motion for Partial Summary Judgment, Dkt. 21.

DEF.'S RESPONSE TO PL.'S MOTION FOR
PARTIAL SUMM. J. (No. 2:19-cv-00156-MJP) – Page 2

and dry rot at the Property. **Ex. 3**; *see* **Ex. 2** at 8. At that time, an engineering consultant explained to Belmain that "ventilation [along the roofing] is inadequate in all buildings at the center areas of the attics and will eventually involve replacement of condensation caused dryrot roof deck plywood sheathing if allowed to continue beyond [two-to-four years]." **Ex. 3** at 1.[5] Based on AIC's investigation and discovery produced by Belmain to date, it appears that Belmain did not take effective remedial action. *See* **Ex. 2** at 35.

C.     **AIC Provided Property Insurance Coverage from 2008 to 2016**

AIC insured the Property with successive 12-month "all risk" property insurance policies from March 25, 2008 to November 13, 2016 (the "Policies"). *See, e.g.*, **Ex. 4**; *see also* Dkt. 15 ¶ 7. The relevant coverage and exclusions language remained consistent throughout this time period.

The coverage and exclusions are defined in the Policies' Special Causes of Loss Form.[6] The Form provides: "[C]overed causes of loss means the Basic Causes of Loss and Risks of Direct Physical Loss not covered by the Basic Causes of Loss unless loss is excluded or limited as stated in Sections B and C that follow." **Ex. 4** at 90.[7] In other words, a "Covered Cause of Loss" occurs if (1) listed on the Basic Causes of Loss Form, or (2) there is another loss that is not excluded in the Special Causes of Loss Form.

The exclusions to the Special Causes of Loss Form are at the crux of this dispute.[8] The exclusions provide that AIC will not pay for damages "caused by or resulting from," among other things, (1) "faulty, inadequate or defective" "design," "workmanship,"

---

[5] The report explained: "Existing e[a]ve vent holes are too few in number to properly vent roofs. The areas over plant windows are not ventilated at any point. This has caused limited ventilation in center portions of buildings and the start of moisture damage to plywood decks." **Ex. 3**. However, the consultant explained: "Added vents can be placed easily at e[a]ves and will preclude further damage." *Id.*

[6] Coverage was provided through a Property-Gard Building and Personal Property Coverage Form, which provides under Section A "Coverage": "[AIC] will pay for direct physical loss of or damage to Covered Property at the location described in the Declarations caused by or resulting from any Covered Cause of Loss." **Ex. 4** at 58. Under Section B "Exclusions," the coverage form provides: "See applicable Causes of Loss Form as shown in the Declarations." *Id.* at 64. The Declarations indicate "special" coverage. *Id.* at 36.

[7] "Risks of Direct Physical Loss" is not defined in the Policies and is therefore read by its ordinary meaning.

[8] The Basic Causes of Loss Form includes coverage for "fire," "lightning," and "explosion," among others. **Ex. 4** at 89-90. Belmain has not claimed any of the Basic Causes of Loss are implicated by its claims here. *See* Mot. at 12-15; Exs. A, E.

DEF.'S RESPONSE TO PL.'S MOTION FOR
PARTIAL SUMM. J. (No. 2:19-cv-00156-MJP) – Page 3

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

"repair," "construction," "maintenance," or the like (**Ex. 4** at 92, § B.3.c; the "Defective

Design or Workmanship Exclusion"), (2) "wear and tear" (*id.* at 91-92, § B.2.d(1);  the

"Wear and Tear Exclusion"), and (3) "decay, deterioration, hidden or latent defect[s]" or

the like (*id.* § B.2.d(2); the "Decay, Deterioration, and Latent Defect Exclusion").

Regarding the Defective Design or Workmanship Exclusion, the Form provides: "But if

loss or damage from a covered cause of loss results, [AIC] will pay for that resulting loss

or damage." *Id.* at 92. Regarding the Wear and Tear and the Decay, Deterioration, and

Latent Defect Exclusions, the Form provides: "But if loss or damage by the <u>specified</u>

<u>causes of loss results</u>, [AIC] will pay for that resulting loss or damage." *Id.*[9]

   This language is modified by the Washington Changes - Excluded Causes of Loss

form no. IL0173 07-02 ("Washington Changes Form"). **Ex. 4** at 22. Section A provides:

   A. In each of the following Forms: …

      4.      CAUSES OF LOSS - SPECIAL FORM …

   in the sections titled Covered Causes of Loss or Exclusions, any introductory
   paragraph preceding an exclusion or list of exclusions is replaced by the following
   paragraph, which pertains to application of those exclusions:

          We will not pay for loss or damage caused by any of the excluded events
          described below. Loss or damage will be considered to have been caused
          by an excluded event if the occurrence of that event:

          a.      Directly and solely results in loss or damage; or

          b.      Initiates a sequence of events that results in loss or damage,
                  regardless of the nature of any intermediate or final event in that
                  sequence.

*Id.* Section C of the Washington Changes Form then replaces the Defective Design or

Workmanship Exclusion with the net effect that the sentence "But if loss or damage by a

Covered Cause of Loss results, we will pay for that resulting loss or damage" is added to

the end of exclusion (instead of in the prefatory paragraph where that language had been

---

[9] "Specified causes of loss" are defined as "one or more of the Basic Causes of Loss" and "also includes,"
among other things, "water damage," though "water damage" is narrowly defined to mean "accidental
discharge or leakage of water or steam as the direct result of the breaking or cracking of any part of a system
or appliance containing water or steam." *Id.* at 95, §§ E.1, E.1.c.

DEF.'S RESPONSE TO PL.'S MOTION FOR
PARTIAL SUMM. J. (No. 2:19-cv-00156-MJP) – Page 4

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

originally). *Id.* at 23. The reader discerns the policy language by reading the Special

Causes of Loss Form together with the Washington Changes Form, which is as follows

(with net changes from the Washington Changes Form underlined):

B. **Exclusions** …

    2.    [AIC] will not pay for loss or damage caused by any of the excluded events described below. Loss or damage will be considered to have been caused by an excluded event if the occurrence of that event:

        a.    Directly and solely results in loss or damage; or

        b.    Initiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence. …

    d.    (1)    Wear and tear;

        (2)    Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself; …

    But if loss or damage by the specified causes of loss results, [AIC] will pay for that resulting loss or damage. …

    3.    [AIC] will not pay for loss or damage caused by any of the excluded events described below. Loss or damage will be considered to have been caused by an excluded event if the occurrence of that event:

        a.    Directly and solely results in loss or damage; or

        b.    Initiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence. …

    c.    Faulty, inadequate or defective:

        (1)    Planning, zoning, development, surveying, siting;

        (2)    Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

        (3)    Materials used in repair, construction, renovation or remodeling; or

        (4)    Maintenance;

    of part or all of any property on or off the described premises. But if loss or damage by a Covered Cause of Loss results, [AIC] will pay for that resulting loss or damage.

**Ex. 4** at 22-23, 90-92.

       Finally, the Policies include one additional, relevant provision, providing: "[AIC]

cover[s] loss or damage commencing . . . [d]uring the policy period shown in the

Declarations . . . ." *Id.* at 72, § H.1.a (the "Commencing Clause").

LAW OFFICES OF
MᴄNᴀᴜʟ Eʙᴇʟ Nᴀᴡʀᴏᴛ & Hᴇʟɢʀᴇɴ ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

**D.    Belmain Claims Water Intrusion Damage at the Property in 2018; Investigation Reveals Wear-and-Tear and Minimal Intrusion and Decay**

In February 2018, Belmain submitted a claim under the Policies for purported water intrusion damage at the Property (the "Claim"). Ex. 3. Belmain retained Morrison Hershfield ("MH") as an engineering and architectural consultant to produce a report assessing the water intrusion and damages. **Ex. 1**.[10] MH's report asserted examples of "water" intrusion and "deterioration" at the Property. *Id.* at 11. However, MH regularly ascribed examples of deterioration to defects in the original construction, maintenance, and repairs. *Id.*; *see, e.g.*, *id.* at 25 (buildings have high exposure to condensation due to poor exterior ventilation in the crawlspaces, attics, and roofs); *id.* at 26 (finding deficiencies throughout the buildings with the installation of the vinyl siding and documenting "questionable nature of the existence and continuity of the air barrier").

AIC retained Wiss, Janney, Elstner & Associates ("WJE") as an engineering consultant to assess the Claim. **Ex. 2**. WJE reported:

> The most commonly observed 'damage' occurs to exterior building envelope components that include: paint coatings, sealants and caulking between trim and siding, wood trim, or siding pieces. Other 'damages' include attic and crawl space surfaces that have moisture staining on some portions of interior surfaces. These damages are normal "<u>wear and tear</u>" deterioration, or simply marks from past water contact, resulting from the original construction of the building.

*Id.* at 35 (emphases added). To the extent water intrusion was noted, WJE explained:

> The cause of most of these damages relate to the building elements coming in contact with moisture over years of time. There are <u>localized construction deficiencies</u> that provide paths for moisture intrusion, water infiltration and/or condensation at exterior walls, attics, and crawlspaces. The main cause of water penetration in the exterior wall, attic, and crawlspace assemblies is <u>inadequate and defective original construction; poor maintenance; and inadequate and improper remedial repairs that worsened existing conditions</u>.

*Id.* (emphases added). Separately, WJE noted examples of exterior trim decay. *Id.* at 9. Yet, WJE disclaimed any finding of cognizable, interior water intrusion damage. *Id.* at 35;

---

[10] MH's report indicates that it reviewed an "Initial Flooding Investigation" dated April 24, 2017. **Ex. 1** at 5. This suggests MH may have been retained in connection with a flooding event. If so, water damage asserted as part of the Claim arising from a flood would be excluded under Section B.1.g of the Special Causes of Loss Form. **Ex. 4** at 91. Discovery into this issue is necessary (*infra* § V.H) and ongoing. *See* **Ex. 5**.

DEF.'S RESPONSE TO PL.'S MOTION FOR
PARTIAL SUMM. J. (No. 2:19-cv-00156-MJP) – Page 6

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1    *see* Ex. D at 7. Generally, WJE found that "[t]he observed deterioration is consistent with

2    what would be found in a building of similar age and construction in a similar

3    environment." *Id.* "At all of the building openings, the exposed elements are serviceable

4    and remain able to serve their intended purpose." *Id.*

5    **E.    AIC Denies Coverage for Belmain's Claim and Belmain Sues**

6        In September 2018, AIC sent Belmain a letter denying coverage for the Claim (the

7    "Denial Letter"). Ex. D. The Denial Letter recounted many findings from the MH and

8    WJE reports and laid out policy provisions relevant to denial of coverage. *Id.* at 1-7. The

9    Denial Letter then explained that there was no coverage for several reasons, including:

10       (1)    WJE "did not observe decay or deterioration of wood elements of the
11                building beneath the cladding resulting from water intrusion." *Id.* at 7.

12       (2)    "Decay or deterioration that results from water intrusion that occurred
                  before the Policies incepted would not be covered."[11]

13       (3)    Coverage was unwarranted because "decay of exterior building
14                components … result[ed] from exposure of the building to the elements"
                  and is therefore excluded "wear and tear." Ex. D at 7.

15       (4)    "<u>In addition</u>, both [MH and WJE] identify examples of faulty, inadequate
16                or defective construction that can allow water to penetrate the cladding
                  and, theoretically, to damage to [sic] the wood building components,"
17                which subjected the Claim to exclusion under the Defective Design or
                  Workmanship Exclusion. *Id.* (emphasis added).

18       (5)    "<u>In addition</u>, as outlined in his report, [WJE] identifies poor maintenance
19                and inadequate remedial repairs that worsened the original defective
                  construction that potentially makes the building prone to water intrusion
20                and a maintenance issue." *Id.* at 8 (emphasis added). "Any damage the
                  buildings may have experienced therefore would fall within exclusions for
21                faulty, inadequate or defective construction, repairs and maintenance." *Id.*

22       (6)    "<u>In addition</u>, any decay or deterioration damage would itself constitute
                  excluded decay and deterioration, which are also excluded causes of loss."
23                *Id.* (emphasis added).

24       (7)    "Nor is the Policy's coverage for 'collapse' implicated" because "[n]either
                  [MH] nor [WJE] identified any component that appears to be in a state of

25

26   ---

[11] "To the extent that the [original] cedar siding has experienced any decay or deterioration, it has not been
established, and likely cannot be established, that such decay or deterioration is not the result of exposure of
the original siding to the elements before the recladding of the building." Ex. D at 7. Since re-cladding
occurred in 2001 (**Ex. 1** at 7), any staining would not fall within the Policies under the Commencing Clause.

DEF.'S RESPONSE TO PL.'S MOTION FOR
PARTIAL SUMM. J. (No. 2:19-cv-00156-MJP) – Page 7

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

such structural impairment as to constitute 'collapse' that would implicate this coverage." *Id.*

(8)     The Claim may be excluded as previously "known" loss. *Id.* at 9. AIC concluded the Denial Letter by explaining the letter was intended to cover only policy terms relevant to the denial, not every term that may "apply" to a coverage analysis. *Id.* AIC then reserved its rights to assert additional coverage defenses. *Id.*

Belmain claims that AIC committed to a single factual predicate and relied on a single legal justification in denying coverage—the Defective Design or Workmanship Exclusion—in the Denial Letter. Even if Belmain's position were legally cogent (it is not, *infra* § V.E), the additive and non-exclusive phrasing of the Denial Letter belies Belmain's characterization. Alone, this defeats Belmain's position in the Motion.

Belmain also faults AIC for failing to mention Section C of the Washington Changes Form in this Denial Letter (and subsequent IFCA Response). Yet, Section C is not a basis for denial. It simply does not create coverage. *Infra* §§ V.B, V.D. As AIC noted, the Denial Letter was "not intended as an exhaustive recitation of all … provisions of the policy that might apply" to an analysis. Ex. D at 9. AIC focused on the provisions strictly pertinent to denying coverage. *Id*. Contrary to Belmain's implication, the noted provisions remain the essential provisions that support AIC's denial. *Infra* § V.[12]

In February 2019, Belmain filed this lawsuit, seeking coverage for the Claim and alleging that AIC engaged in a bad faith denial of coverage. Dkt. 1. AIC has denied that coverage is warranted, and alleged that the claims stated in the complaint are precluded by "limitations" and "exclusions" in the Policies, among other things. Dkt. 15 at 6.

AIC has engaged in discovery as part of this lawsuit to further investigate and

---

[12] In December 2018, Belmain provided an IFCA Notice to AIC. Ex. E. Later that month, AIC sent Belmain a letter restating AIC's bases for denial as previously stated in the Denial Letter (the "IFCA Response"). Ex. F. Contrary to Belmain's suggestion, the IFCA Response again stated the factual and legal bases for denial additively and non-exclusively. *See, e.g., id.* at 2 (explaining "decay" identified by consultants "is the result of a failure to adequately maintain the building and of wear and tear, as well as excluded long term decay and deterioration.  Your letter does not appear to take issue with [AIC]'s disclaimer of coverage for decay or deterioration damage …"); *id.* at 7 ("In addition, as [AIC] noted [in the Denial Letter], the Policies only provide coverage for losses that commence during the times when the Policies were in effect.").

LAW OFFICES OF
MᶜNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

elucidate the decisive coverage issues. *See* **Ex. 5**. Belmain has produced some previously undisclosed information, including communications among Belmain's board members (*see id.*), but it has not been willing to go beyond that. *See id.* Thus, significant disputes remain regarding Belmain's willingness to provide additional information.

This Motion followed. Belmain argues that this Court may find coverage exists as a matter of law for water intrusion damage because (1) water intrusion is not *per se* excluded from coverage by an all-risk property insurance policy, and (2) the "ensuing loss" sentence in the Defective Design or Workmanship Exclusion nullifies the exclusion if water enters the defectively designed, built, or maintained structure. Yet, Belmain is wrong on the facts, the meaning of pertinent policy provisions, and the law.

### III. ISSUE PRESENTED

Should the Court grant summary judgment in favor of Belmain that coverage is owed as a matter of law for all water intrusion damage to the Property?

### IV. EVIDENCE RELIED UPON

AIC relies upon the Declaration of Curtis C. Isacke and Exhibits 1–5 attached thereto, and the records on file herein.

### V. AUTHORITY AND ARGUMENT

A.    **Legal Standard**

1.    **Summary Judgment Standard**

Summary judgment is appropriate when there is no genuine dispute as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party carries the burden of demonstrating it is entitled to judgment as a matter of law due to an absence of disputed material facts. *Id.* If the moving party meets its initial burden, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In resolving a motion for summary judgment, all evidence and

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren pllc
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

inferences are resolved in the non-moving party's favor. *Id.* at 255. "If, under any reasonable construction of the evidence and any acceptable theory of law, one would be entitled to prevail, a summary judgment against him cannot be sustained." *Industrial Bldg. Materials, Inc. v. Interchemical Corp.*, 437 F.2d 1336, 1340 (9th Cir. 1970).

### 2.    Interpreting All-Risk Insurance Policies

"Interpretation of an insurance policy is a question of law." *Wright v. Safeco Ins. Co. of Am.*, 124 Wash. App. 263, 271, 109 P.3d 1 (2004). Generally, "[i]nsurance policies are construed as a whole and are given a fair, reasonable, and sensible construction consistent with the understanding of an average person purchasing insurance." *Capelouto v. Valley Forge Ins. Co.*, 98 Wash. App. 7, 13-14, 990 P.2d 414 (1999).[13] With all-risk policies, Washington Courts look not only to the policy language but also its structure. *Findlay v. United Pac. Ins. Co.*, 129 Wash. 2d 368, 377, 917 P.2d 116 (1996). The policies "consist[] of a grant of coverage counterbalanced by coverage exclusions" so "an interpretation of provisions contained in such a policy must acknowledge this structure" as an "objective source of meaning and intent." *Id.* Any policy interpretation must ensure a "fair result within the reasonable expectations of both the insured and the insurer." *Id.* For example, courts hold that "[e]nsuing loss provisions are exceptions to policy exclusions and should not be interpreted to create coverage." *Wright*, 124 Wash. App. at 274.

A risk of unfairness arises if the courts adopt artificially narrow constructions of the exclusionary clauses or broad constructions of ensuing loss provisions. *Vision One, LLC v. Philadelphia Indem. Ins. Co.*, 174 Wash. 2d 501, 516, 276 P.3d 300 (2012). The Washington Supreme Court has explained "it is important to read the ensuing loss clause in the context of the coverage that was contemplated by the parties" because "absurd

---

[13] "The determination of whether coverage exists is a two-step process: first, the insured must show the policy covers his loss; second, to avoid coverage, the insurer must show specific policy language excludes the insured's loss." *Wright*, 124 Wash. App. at 271. If terms are defined in the policy, the definitions control. *Overton v. Consol. Ins. Co.*, 145 Wash. 2d 417, 427, 38 P.3d 322 (2002). If terms are not defined, they are given their "plain, ordinary, and popular meaning." *Capelouto*, 98 Wash. App. at 13-14.

DEF.'S RESPONSE TO PL.'S MOTION FOR
PARTIAL SUMM. J. (No. 2:19-cv-00156-MJP) –
Page 10

results could otherwise follow." *Id*. The Court then cited the following hypothetical:

> As an 'all-risk' policy, this insurance policy basically covers everything unless specifically excluded. That means the number of possibilities for last-in-time 'but for' causes of damage are limited only by the imagination of the reader. … What if faulty construction allows humid summer air to enter the building, which rusts metal fixtures? But for the exposure to the summer air, no damage to the fixtures would have occurred. Yet the contract does not exclude damages caused by 'air.' Coverage?

*Id*. The Court implies the obvious answer: Of course not. The damage would be excluded under the "faulty construction" exclusion. Any other result is "absurd." *Id*.[14] As will be explained, Belmain urges this Court to reach a similar "absurd" conclusion—contrary to the structure and intent of governing policies—here. The Court should reject that overture.

**B.      Under Washington Law, the Policy Provides that Damage and Loss Is Not Covered if the Efficient Proximate Cause Is Faulty, Inadequate or Defective Design, Workmanship, Repair, Construction, Maintenance, or the Like**

Applying established Washington law ignored by Belmain, the as-modified Defective Design or Workmanship Exclusion provides that if (1) the efficient proximate cause of damage or loss is "faulty, inadequate or defective" "design," "workmanship," "repair," "construction," "maintenance," or the like then (2) the damage or loss is excluded from coverage. This is true even assuming that Belmain's construction of the "ensuing loss provision" in the Defective Design or Workmanship Exclusion were correct (which it is not, *infra* § V.D). Since AIC's investigation has revealed evidence that events excluded by Defective Design or Workmanship Exclusion are the efficient proximate cause here, a summary finding of coverage would be improper.[15]

The concept of "efficient proximate cause" means the cause that "sets other causes

---

[14] Likewise, the Court of Appeals has explained—in reviewing an exclusion for "[f]aulty . . . [d]esign, specifications, workmanship, repair, [or] construction"—that "[a] common sense reading of the exclusion indicates that it applies to inadequate specifications for the execution of a project as well as to damage caused by inadequately or defectively constructed property." *Capelouto*, 98 Wash. App. at 16. The insured contended damage caused by sewage resulting from the "inadequately or defectively constructed property" was not separately excluded and therefore reintroduced by the ensuing loss clause. The Court rejected the insured's argument, explaining the insured's interpretation was "unreasonable." *Id*. at 17-18.

[15] To the contrary, since Belmain and Belmain's expert witness appear to concede the issue that faulty, inadequate or defective" "design," "workmanship," "repair," "construction," "maintenance," or the like is the efficient proximate cause of the loss here (*e.g.*, Mot.; **Ex. 1** at 11), it appears there are not material facts in dispute and this matter may be ripe for summary resolution against Belmain and in AIC's favor.

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

in motion which, in an unbroken sequence and connection between the act and final loss, produce the result for which recovery is sought." *Wright*, 124 Wash. App. at 273-74.[16]

In Washington insurance law, if an insurance policy provides or curtails coverage based on whether a peril "causes" damage, the term is understood to mean the "efficient proximate cause" of the damage. *Safeco Ins. Co. of Am. v. Hirschmann*, 112 Wash. 2d 621, 629, 773 P.2d 413 (1989). Indeed, as relevant here, "whenever the term 'cause' appears in an exclusionary clause it must be read as 'efficient proximate cause.'" *Id.*

For any loss, there is only one "efficient proximate cause." *Findlay v. United Pac. Ins. Co.*, 78 Wash. App. 17, 20, 895 P.2d 32 (1995), *aff'd,* 129 Wash. 2d 368, 917 P.2d 116 (1996).[17] Typically, determination of the efficient proximate is a factual issue for the fact-finder. *See Kish*, 125 Wash. 2d at 169 & n.1; *AXIS Surplus Ins. Co. v. Intracorp Real Estate, LLC*, No. C08-1278-JCC, 2009 WL 10676383, at *5 (W.D. Wash. Sept. 14, 2009).

By operation of law, an efficient proximate cause analysis applies only to create coverage for a loss: "The rule is applicable when an <u>insured</u> risk set into motion a chain of events that included an <u>excepted</u> risk." *Wright*, 124 Wash. App. at 273-74 (emphasis in original); *see Vision One*, 174 Wash. 2d at 519. The rule is "an interpretive tool to establish coverage when a covered peril 'sets other causes into motion which, in an unbroken sequence, produce the result for which recovery is sought.'" *Id.*

The Washington Supreme Court has made clear that the "opposite proposition" is not a default "rule of law" that is applied to insurance contracts. *Id.* As a default rule, "[w]hen an <u>excluded peril</u> sets in motion a causal chain that includes covered perils, the efficient proximate cause rule does <u>not</u> mandate exclusion of the loss." *Id.*

---

[16] *See Sunbreaker Condo. Ass'n v. Travelers Ins. Co.*, 79 Wash. App. 368, 379 n.17, 901 P.2d 1079 (1995) ("The proximate cause is the efficient one, the one that necessarily sets the other causes in operation. The causes that are merely incidental or instruments of a superior or controlling agency are not the proximate causes and the responsible ones, though they may be nearer in time to the result.").

[17] *See Kish v. Ins. Co. of N. Am.*, 125 Wash. 2d 164, 169 n.1, 883 P.2d 308 (1994) (citing jury instruction that "[t]he efficient proximate cause of a loss, where there may be multiple causes, is the predominant cause. The efficient proximate cause is the one to which the loss is to be attributed, though other causes may precede, follow, or run concurrently with it. It is not necessarily the first or last act in a chain of events, but is the cause which had the greatest influence in causing the loss.").

LAW OFFICES OF
MᴄNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

However, the Supreme Court has explained that insurance policy language may be drafted to accomplish this "opposite proposition"—i.e. exclude coverage if an excluded event is the efficient proximate cause. *Id.* at 520-21. "[A]n insurer may draft policy language to deny coverage when an excluded peril initiates an unbroken causal chain." *Id.* (citing *Findlay*, 129 Wash. 2d at 380). The Supreme Court has called this the "inverse efficient proximate cause" rule. *Id*. In *Findlay*, 129 Wash. 2d at 380, the Supreme Court explained that it would not "rewrite a clear contract between the parties" where an inverse efficient proximate cause analysis is written into the contract: "If the efficient proximate cause, the cause that triggers other causes to result in a loss, is a specifically named, unambiguous excluded peril in the policy, we will not mandate coverage." The Court explained that the "efficient proximate cause rule should be applied to enforce the reasonable expectations" not contradict those expectations. *Id.*

How do we know if the "inverse efficient proximate cause" analysis applies? The Supreme Court has held that it is <u>not</u> accomplished with exclusionary language excluding "losses 'caused directly or indirectly'" by a peril where the exclusion is followed by an ensuing loss provision providing that "any ensuing loss not excluded is covered." *Vision One*, 174 Wash. 2d at 514 (citing *Wright,* 124 Wash. App. at 273).

On the other hand, and crucially here, the Court has explained an "inverse" efficient proximate cause interpretation may be accomplished through more precise language. *Vision One*, 174 Wash. 2d at 520-21. In *Vision One*, the Court considered whether a defective construction exclusion was entitled to application of an "inverse" efficient proximate cause rule. The prefatory language provided that loss or damage is considered to have been "caused" by an excluded event if the excluded event "[i]nitiates a sequence of events that results in loss or damage." *Id.* at 520. Based on that prefatory language, the Court then opined that the exclusionary language may "permit the sort of inverse efficient proximate cause analysis" typically only applied to create coverage. *Id.* at

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

521 (citing *Findlay*, 129 Wash. 2d at 380); *see also Capelouto*, 98 Wash. App. at 20

(recognizing that use of this same language is intended to "recognize[] our courts' use of

the efficient proximate cause rule to determine coverage under an insurance contract").[18]

     *Vision One* and *Findlay* direct the analysis here. The Defective Design or

Workmanship Exclusion, <u>before it was modified</u> by the Washington Changes Form,

provided that "[AIC will not pay for loss or damage caused by or resulting from …

"faulty, inadequate or defective" design," "workmanship," "repair," "construction,"

"maintenance," or the like. **Ex. 4** at 92, §§ B.3, B.3.c. This exclusion was also prefaced by

the sentence: "But if loss or damage by a Covered Cause of Loss results, we will pay for

that resulting loss or damage." *Id.* § B.3. As drafted, this language closely resembled the

exclusionary language discussed in *Vision One* for which an "inverse" efficient proximate

cause analysis would <u>not</u> apply.

     Yet, as the parties agree, the Washington Changes Form changes the operative

language. The Defective Design or Workmanship Exclusion, <u>as modified by the</u>

<u>Washington Changes Form</u>, provides "[AIC] will not pay for loss or damage caused by"

"faulty, inadequate or defective" design," "workmanship," "repair," "construction,"

"maintenance," or the like, and "[l]oss or damage will be considered to have been caused

by [the] excluded event[s] if the occurrence," among other things, "[i]nitiates a sequence

of events that results in loss or damage, regardless of the nature of any intermediate or

final event in that sequence." **Ex. 4** at 92, 22-23; *see supra* § II.C. This exclusion is

followed by a sentence stating: "But if loss or damage by a Covered Cause of Loss results,

we will pay for that resulting loss or damage." **Ex. 4** at 92, 22-23; *see supra* § II.C.

     This as-modified language is identical in material respects to the language the

---

[18] The *Vision One* court declined to rule on this issue in the insurer's favor only because the insurer failed to appeal the trial court's order precluding the insurer from bringing the argument on the merits below. *Vision One*, 174 Wash. 2d at 521. The insurer had not asserted this prefatory language as a policy defense in its denial of coverage. *Id.* at 520-21. For reasons unarticulated by the Supreme Court, the trial court found that the insurer's failure to raise this issue as a coverage defense precluded litigation of the issue. *Id.* The insurer then failed to appeal the issue. *Id.* Here, AIC cited and relied on the relevant language in its denial letter (Ex. D at 7-9), so there is no reason this Court should fail to reach the ultimate issue.

DEF.'S RESPONSE TO PL.'S MOTION FOR
PARTIAL SUMM. J. (No. 2:19-cv-00156-MJP) –
Page 14

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

*Vision One* Court considered. *Compare Vision One, LLC*, 174 Wash. 2d at 520 *with* **Ex. 4** at 92, 22-23. The *Vision One* Court suggested such language "permit[s]" "inverse efficient proximate cause analysis." *Id.* at 521.[19]

Accordingly, applying Washington law to the as-modified policy language here, if "faulty, inadequate or defective" design," "workmanship," "repair," "construction," "maintenance," or the like (**Ex. 4** at 92, 22-23) "sets other causes in motion which, in an unbroken sequence and connection between the act and final loss, produce the result for which recovery is sought" (*Wright*, 124 Wash. App. at 273–74), then coverage is excluded. *Vision One*, 174 Wash. 2d at 521; *Findlay*, 129 Wash. 2d at 376.

The question then becomes: How does the Court reconcile this "inverse" efficient proximate cause analysis with the as-modified conclusory sentence providing "But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage?" **Ex. 4** at 92, 22-23. This question finds an answer in settled law too.[20] An ensuing loss clause in an exclusion "preserve[s] coverage for damages <u>caused by</u> [a covered peril]" notwithstanding arguments that the exclusion applies. *Vision One*, 174 Wash. 2d at 515 (emphasis added). Again, whenever the concept of "causing" loss is implicated, "it must be read as 'efficient proximate cause.'" *Hirschmann*, 112 Wash. 2d at 629. And, there is only one "efficient proximate cause." *Findlay*, 78 Wash. App. at 20.

Accordingly, both the Defective Design or Workmanship Exclusion and an "ensuing loss" provision are subject to efficient proximate cause analysis. Where multiple efficient proximate causes may exist, it is for the factfinder to decide which is true. *See*

---

[19] Indeed, the language utilized here may weigh even more strongly in favor of an "inverse" efficient proximate cause analysis. Here, the prefatory language provides that loss or damage is still caused by an event described in Defective Design or Workmanship Exclusion if it "[i]nitiates a sequence of events that results in loss or damage, <u>regardless of the nature of any intermediate or final event in that sequence</u>." **Ex. 4** at 92, 22-23 (emphasis added); *supra* § II.C. By its plain language, this prefatory language extends an "inverse" efficient proximate cause analysis back to the excluded event even if a covered event shows up in the causal chain. The *Vision One* Court's analysis applies with even greater force here.

[20] For the moment, AIC presumes that this sentence operates as an "ensuing loss" clause in the manner Belmain claims. That said, as will be explained further below, when applying the definition of "Covered Cause of Loss" contained in the Policies, the purported "ensuing loss" clause lacks the legal effect Belmain asserts. This is a separate reason why the Motion must be denied. *Infra* § V.D.

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren pllc
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1   *Kish*, 125 Wash. 2d at 169 & n.1. Summary judgment is improper.

2       Indeed, the Washington Court of Appeals engaged in this analysis in *Sunbreaker*

3   *Condo. Ass'n*, 79 Wash. App. at 379-80. After the *Sunbreaker* Court found that an

4   efficient proximate cause analysis applied to both the coverage grant and the relevant

5   exclusion, the Court found that it was improper to resolve coverage on summary judgment

6   where disputes as to the efficient proximate cause existed. *Id.* The Court explained:

7       Although the parties do not dispute the sequence of events, a reasonable juror
        could conclude that defective design, defective materials, repeated seepage or
8       leakage, and/or fungus efficiently caused Sunbreaker's loss. If one of these
        excluded perils efficiently caused the loss, the insurer is not liable. Proximate
9       cause is an issue of material fact precluding summary judgment.

10  *Id.* The same rationale applies in this case.

11      In sum, the question is which event set other causes in motion which, in an

12  unbroken sequence and connection between the act and final loss, produced the result for

13  which recovery is sought: (1) "faulty, inadequate or defective" design," "workmanship,"

14  "repair," "construction," "maintenance," or the like, or (2) water intrusion? Belmain is not

15  entitled to summary judgment that the latter event (water intrusion) is the efficient

16  proximate cause against contrary evidence. **Ex. 1** at 11; **Ex. 2** at 35; *Sunbreaker Condo.*

17  *Ass'n*, 79 Wash. App. at 380; *see AXIS Surplus Ins. Co.*, 2009 WL 10676383, at * 5.[21]

18  **C.    Belmain's Interpretation of the Defective Design or Workmanship Exclusion
            Is Belied by the Text and Structure of the Policies and the Parties'**
19          **Reasonable Expectations**

20      AIC's interpretation of the as-modified Defective Design or Workmanship

21  Exclusion is sensible based on the structure of the Policies and the reasonable expectations

22  of the parties. The exclusion is one of only a few from an otherwise encompassing "all-

23  risk" coverage grant. And, it is phrased broadly: if "faulty, inadequate or defective"

24  ────────────────────────
    [21] Courts in other jurisdictions have reached similar results. In *Friedberg v. Chubb & Son, Inc.*, 691 F.3d
25  948 (8th Cir. 2012) (Minnesota law), the Eighth Circuit considered similar facts and stated: "Once the house
    was plagued with faulty construction, it was a foreseeable and natural consequence that water would enter.
    Although water intrusion played an essential role in the damage to the Friedbergs' house, it was not an
26  independent and efficient cause of the loss." *Id.* at 952. The Court went further, concluding water is not an
    ensuing loss, as "ensuing loss" applied "only to 'distinct, separable, ensuing losses," and that "damage due
    to faulty construction and resulting water intrusion" were not "separable and distinct perils." *Id.* at 953.

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

design," "workmanship," "repair," "construction," "maintenance," or the like "[i]nitiate[]
a sequence of events that results in loss or damage" "[AIC] will not pay for loss or
damage. **Ex. 4** at 92, 22-23. A reasonable insured approaching these Policies would
conclude that it has not obtained coverage for damage resulting from design, construction,
or maintenance—i.e., actions or inactions of the insured or of third parties. *See Findlay*,
129 Wash. 2d at 377-78. This makes sense because an insured cannot expect coverage for
its own intentional failures. And, the insured would expect to pursue remedies against
third parties (e.g., contractors) if damage resulted from third party mistakes.

Belmain urges a contrary construction of the Defective Design or Workmanship
Exclusion, one that would (entirely implicitly) eviscerate one of only a few exclusions to
an "all-risk" property insurance policy. Belmain argues that this Court may find that
coverage exists as a matter of law for water intrusion damage here because (1) water
intrusion is not *per se* excluded from coverage by an all-risk property insurance policy,[22]
and (2) the "ensuing loss" sentence in the Defective Design or Workmanship Exclusion
nullifies the exclusion if water (or moisture, or air, or wind, or any other ordinary weather
condition) enters the defectively designed, built, or maintained structure.

Yet, it would be "absurd" for an insured to expect that an exclusion like this
Defective Design or Workmanship Exclusion is simply moot when the excluded event
operated to let in normal environmental conditions such as air, wind, or rain. *See Vision
One*, 174 Wash. 2d at 516. After all, what is a building designed, constructed, or
maintained to do if not to provide shelter from environmental conditions? *See id.* As the
*Findlay* Court explained: "[T]he reasonable expectations of the insurer and the insured
in [a] first-party property loss … cannot reasonably include an expectation of coverage in

---

[22] Belmain presumes without arguing that water intrusion is covered as a matter of law under previous
decisions in this district. Yet, the one case Belmain cites, *Churchill v. Factory Mut. Ins. Co.*, 234 F. Supp.
2d 1182, 1187-89 (W.D. Wash. 2002), explains that even if water intrusion is not excluded, the plaintiff
must still show that the water intrusion was fortuitous. *Id.* Generally speaking, water intrusion from rainfall
in western Washington is not a fortuitous loss. Rainfall is pervasive and intrusion can be prevented with
adequate maintenance. Since Belmain has not pointed to any fortuitous weather or water intrusion event(s),
the water intrusion may ultimately <u>not</u> be covered at all. *See id.* For this reason too, the Motion fails.

DEF.'S RESPONSE TO PL.'S MOTION FOR
PARTIAL SUMM. J. (No. 2:19-cv-00156-MJP) –
Page 17

1   property loss cases in which the efficient proximate cause of the loss is an activity

2   expressly <u>excluded</u> under the policy." 129 Wash. 2d at 377–78 (emphasis in original).[23]

3         Belmain's construction of the Defective Design or Workmanship Exclusion is also

4   unreasonable and improper in light of basic rules of textual construction. Belmain

5   contends that the "ensuing loss" change added by the Washington Change Form means

6   that if any non-excluded peril arises as a result of "faulty, inadequate or defective"

7   "design," "workmanship," "repair," "construction," "maintenance," or the like, it remains

8   covered and this Court should find coverage as a matter of law. Yet, taken to its logical

9   conclusion, Belmain's interpretation renders the prefatory language also added by the

10  same Washington Change Form (i.e., "Initiates a sequence of events that results in loss or

11  damage, regardless of the nature of any intermediate or final event in that sequence") void

12  and meaningless.[24] The law is clear that such a reading is disfavored. "An agreement

13  should be interpreted in a way that gives effect to each provision." *McDonald v. State*

14  *Farm Fire & Cas. Co.*, 119 Wash. 2d 724, 734, 837 P.2d 1000 (1992) (quoting

15  RESTATEMENT (SECOND) OF CONTRACTS, § 203(a) (1981)). Belmain's position fails.

16        In contrast, AIC's interpretation does not suffer from similar logical inconsistency.

17  Again, the as-modified Defective Design or Workmanship Exclusion directs the factfinder

18  to determine the efficient proximate cause. *Supra* § V.B. If a failure of design,

19  construction, or maintenance leads to the loss, the loss is not covered. If, on the other

20  hand, for example, an intervening hurricane fortuitously damages the structure (and would

21  have damaged the structure even if it had been properly designed, constructed, or

22  maintained) the "ensuing loss" sentence allows the factfinder to reasonably conclude that

23

24  [23] Belmain's interpretation is particularly unreasonable here given the Defective Design or Workmanship Exclusion operates when it "[i]nitiates a sequence of events that results in loss or damage, <u>regardless of the nature of any intermediate or final event in that sequence</u>." **Ex. 4** at 22-23 (emphasis added).

25  [24] If defective design or construction initiates a sequence of events including an otherwise excluded loss

26  (e.g., a flood), the prefatory language is meaningless because the loss would be excluded anyway. If, on the other hand, defective design or construction initiates a sequence of events including an otherwise covered loss, again the language would be entirely superfluous and without meaning because the "ensuing loss" sentence would restore coverage. Belmain's interpretation renders the prefatory clause meaningless.

DEF.'S RESPONSE TO PL.'S MOTION FOR
PARTIAL SUMM. J. (No. 2:19-cv-00156-MJP) –
Page 18

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1   the hurricane is the efficient proximate cause.

2   **D.   Applying the Policies' Definition of "Covered Cause of Loss," Water Intrusion Is Not a Covered if Caused by Faulty, Inadequate or Defective Design, Workmanship, Repair, Construction, Maintenance, or the Like**

3

4   Belmain's theory of coverage relies upon an "ensuing loss" clause included in the

5   as-modified Defective Design or Workmanship Exclusion. An ensuing loss clause does

6   not itself create coverage, but instead preserves coverage if it otherwise exists under the

7   insurance contract. *Capelouto*, 98 Wash. App. at 16.

8   Here, the pertinent clause provides: "But if loss or damage by a Covered Cause of

9   Loss results, we will pay for that resulting loss or damage." **Ex. 4** at 92, 22-23. "Covered

10   Cause of Loss" is defined term in the Policies. *See id.* at 90. If terms are defined in an

11   insurance policy, the definitions control. *Overton*, 145 Wash. 2d at 427. The Policies

12   provide: "[C]overed causes of loss means the Basic Causes of Loss and Risks of Direct

13   Physical Loss not covered by the Basic Causes of Loss unless loss is excluded or limited

14   as stated in Sections B and C that follow." **Ex. 4** at 90.[25]

15   Here, it is undisputed that water intrusion is not an expressly listed "Basic Cause

16   of Loss." **Ex. 4** at 89-90. Accordingly, under the definition in the Policies, water intrusion

17   loss is a "Covered Cause of Loss" only if it is not "excluded or limited as stated in

18   Sections B and C that follow." *Id.* at 90. Belmain simply presumes, without analyzing,

19   that water intrusion is such a non-excluded or limited loss. This is incorrect.

20   As explained, Exclusion B.c.3 (discussed here as the "Defective Design or

21   Workmanship Exclusion") provides an exclusion where "faulty, inadequate or defective"

22   design," "workmanship," "repair," "construction," "maintenance," or the like "[i]nitiate[]

23   a sequence of events that results in loss or damage." **Ex. 4** at 92, 22-23. Thus, the Policies

24   provide that water intrusion causally resulting from these events is not a "Covered Cause

25

26   [25] In other words, a "Covered Cause of Loss" is defined to occur if there is a loss resulting from (1) a peril on the Basic Causes of Loss Form (such as fire) (*see* **Ex. 4** at 89), or (2) a cause that is not expressly excluded in the Special Causes of Loss Form. Note that the term "Risks of Direct Physical Loss" is not defined, so it is applied by its plain language. *Capelouto*, 98 Wash. App. at 13-14.

DEF.'S RESPONSE TO PL.'S MOTION FOR
PARTIAL SUMM. J. (No. 2:19-cv-00156-MJP) –
Page 19

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

of Loss." *Id.* In turn, when the "ensuing loss" sentence later reintroduces coverage for "loss or damage by a <u>Covered Cause of Loss</u>," it is <u>not</u> reintroducing coverage for water intrusion causally resulting from design, workmanship, or repair.

Belmain looks past the Policy language and instead relies on Washington authority holding that water intrusion <u>in the abstract</u> is not excluded by all-risk property insurance unless the policy express states so. The authority cited by Belmain does not analyze or resolve the issue presented here. The issue is whether water intrusion remains a "Covered Cause of Loss" under these particular insurance contract terms <u>where the water intrusion admittedly arises from conduct otherwise excluded under the Defective Design or Workmanship Exclusion</u>. A plain language analysis of the exclusion reveals that water intrusion is <u>not</u> covered if it enters because of defective design, workmanship, or repair.[26]

For this reason too, Belmain has failed to meet its initial burden proving that it is entitled to judgment as a matter of law under the Policies. The Motion should be denied.

**E.      Belmain's Estoppel Theory of Coverage Fails as a Factual and Legal Matter**

Belmain argues AIC is estopped from asserting other coverage theories because AIC committed to faulty construction and maintenance as its sole legal and factual basis in the Denial Letter. Belmain is wrong on the facts and the law.

In fact, the Denial Letter lists numerous, <u>additive</u> reasons why coverage cannot apply here. Ex. D at 7-9. For example, the Denial Letter explained that coverage is not afforded under the Policies because damage "result[ed] from exposure of the building to the elements" and is therefore excluded "wear and tear." *Id.* at 7.[27] Likewise, the letter provides that "[i]n addition, any decay or deterioration damage would itself constitute excluded decay and deterioration" under the as-modified Decay, Deterioration, and Latent

---

[26] *See Overton*, 145 Wash. 2d at 427-28 (it is error for Washington court to "depart[] from the plain language of the policy" and "fail to recognize the policy defines [a term]").

[27] This basis for denial is supported by the AIC's consultant's factual findings. **Ex. 2** at 35. It also finds legal support in the Wear and Tear Exclusion, which excludes coverage if "wear and tear" "directly and solely results in loss or damage" or "[i]nitiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence." **Ex. 4** at 91-92 § B.2.d(1), 22 § A.

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1    Defect Exclusion. Ex. D at 8.[28] If either of these exclusions apply, coverage is excluded

2    here. *See Kish*, 125 Wash. 2d at 170; *Sunbreaker Condo. Ass'n*, 79 Wash. App. at 376.[29]

3            On these facts, Belmain's contention that AIC should be estopped from arguing

4    these (and other) coverage defenses is spurious. An insurer is estopped from asserting

5    coverage defenses only if the insured can carry the burden of proving the "traditional

6    forms of estoppel" relating to the insurer's "fail[ure] to raise all its grounds for denial in

7    its initial denial letter." *Hayden*, 141 Wash. 2d at 63. Here, Belmain does not argue AIC

8    "failed to raise" certain coverage defenses, but instead advances the novel theory that AIC

9    should be precluded from relying on other coverage defenses AIC <u>did</u> raise because AIC

10   (allegedly) relied on the Defective Design or Workmanship Exclusion too stridently. This

11   theory does not find support in the law. *See Hayden*, 141 Wash. 2d at 63 (coverage

12   estoppel only can apply if a known defense is not disclosed). And, to the extent Belmain's

13   estoppel theory turns on AIC's purported commitment to or characterization of certain

14   <u>facts</u> in the Denial Letter, Belmain's argument necessarily fails. *See Anderson v. Country*

15   *Mut. Ins. Co.*, No. C14-0048JLR, 2015 WL 687399, at *10 (W.D. Wash. Feb. 18, 2015).

16           Further, to prevail on an estoppel theory, the insured must show it "either suffered

17   prejudice or the insurer acted in bad faith." *Hayden v*, 141 Wash. 2d at 63.[30] Belmain

18   cannot credibly claim it has been prejudiced where AIC has actually disclosed its several

19   theories of denying coverage in its Denial Letter. Indeed, before the Denial Letter,

20   Belmain's own consultant was telling Belmain that certain damages related to decay,

21

22   ────────────────

[28] Again, this separate basis for denial is supported by WJE's factual findings (**Ex. 2** at 9) and is justified by
policy language excluding coverage if "[r]ust, corrosion, fungus, decay, deterioration, hidden or latent defect
or any quality in property that causes it to damage or destroy itself" "directly and solely results in loss or
damage" or "[i]nitiates a sequence of events that results in loss or damage, regardless of the nature of any
intermediate or final event in that sequence." **Ex. 4** at 91-92 § B.2.d(2), 22 § A.

[29] Importantly, the Wear and Tear Exclusion and the Decay, Deterioration, and Latent Defect Exclusion do
not contain an "ensuing loss" sentence like the one contained in the Defective Design or Workmanship
Exclusion. Instead, the provisions provide "if loss or damage by the <u>specified causes of loss</u> results, [AIC]
will pay for that resulting loss or damage." Ex. 4 at 92. "Specified causes of loss" are defined to include
only an enumerated list, and none of those enumerated losses are relevant here. *Id.* at 95; *supra* § II.C.

[30] In *Vision One*, 174 Wash. 2d at 520, the Court refused to allow an insurer to pursue a coverage defense
that was not asserted in the denial letter without estoppel analysis only because the insurer failed to appeal
the trial court's estoppel order.

DEF.'S RESPONSE TO PL.'S MOTION FOR
PARTIAL SUMM. J. (No. 2:19-cv-00156-MJP) –
Page 21

LAW OFFICES OF
MᶜNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

deterioration, and other latent issues. *E.g.*, **Ex. 1** at 11-12. Belmain cannot claim it suffered any burden where it has been well-versed on the issues from the beginning.

In any event, even if Belmain could make a case for prejudice in theory, it has failed to do so here. Belmain has presented no evidence or argument whatsoever. Accordingly, the Court must deny Belmain's coverage by estoppel theory and deny the Motion. *See Hayden*, 141 Wash. 2d at 63; *Anderson*, 2015 WL 687399, at *9.[31]

### F.     Belmain's Attempts to Dismiss AIC's Coverage Defense Based on the Decay, Deterioration, and Latent Defect Exclusion Are Misconceived

AIC and Belmain agree that the Property shows evidence of mild decay, deterioration, and other latent issues. **Ex. 1** at 11; **Ex. 2** at 9. Further, it is apparent that Belmain seeks payment for such damage under the Policies. **Ex. 1** at 25-31. Yet, the Decay, Deterioration, and Latent Defect Exclusion disclaims coverage for "loss or damage" that "results" from "decay, deterioration, hidden or latent defect" or the like.

Belmain hand waives AIC's coverage defense for two reasons. First, Belmain argues that AIC committed to Defective Design or Workmanship Exclusion in denying coverage, to the exclusion of any Decay, Deterioration, and Latent Defect Exclusion argument. This is wrong. As relevant here, the Denial Letter stated: "<u>In addition</u>, any decay or deterioration damage would itself constitute excluded decay and deterioration, which are also excluded causes of loss." Ex. D at 8 (emphasis added).

Second, Belmain argues that AIC committed to the argument that the Decay, Deterioration, and Latent Defect Exclusion applied only to the extent it "[i]nitiate[d] a sequence of events that results in loss or damage" (i.e. it was the "efficient proximate cause" of a separate loss). Mot. at 14-15. Yet, Belmain lacks any evidence for this contention; it cites only the discussion of <u>Defective Design or Workmanship Exclusion</u> in

---

[31] It would be improper to allow Belmain to introduce evidence of prejudice or bad faith in its reply brief, since doing so would deny AIC of the opportunity to respond. *See Jinni Tech Ltd. v. Red.com, Inc.*, No. C17-0217JLR, 2017 WL 4758761, at *4 (W.D. Wash. Oct. 20, 2017).

DEF.'S RESPONSE TO PL.'S MOTION FOR
PARTIAL SUMM. J. (No. 2:19-cv-00156-MJP) –
Page 22

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

the IFCA Response. *See id.* Indeed, Belmain is simply wrong: The Denial Letter indicates that AIC identified decay as a "direct" cause of loss, explaining "decay or deterioration damage would itself" be excluded. Ex. D at 8. This is a permissible application of such an exclusion. *See, e.g.*, *The Bedford, LLC v. Safeco Ins. Co. of Am.*, 140 Wash. App. 1033, 2007 WL 2757271, at *2-3 (2007).[32]

Belmain runs from this exclusion because it knows that even if its interpretation of the Defective Design or Workmanship Exclusion were correct in all regards, the Decay, Deterioration, and Latent Defect Exclusion can and would still preclude coverage for the damages Belmain attributes to "water intrusion" here. *See The Bedford*, 2007 WL 2757271, at *2-3. The Motion must be denied for this reason too.

**G.    The Commencing Clause Bars the Requested Relief Here**

The Policies provide coverage only for damages that "commenced" during the policy period. **Ex. 4** at 72. Damage does not "commence" during a policy period if it "either … began before [the] coverage, or . . . did not begin until after [the] coverage." *Dally Properties, LLC v. Truck Ins. Exch.*, No. C05-0254L, 2006 WL 1041932, at *2 (W.D. Wash. Apr. 5, 2006); *see Ellis Court Apartments P'ship ex rel. Woodside Corp. v. State Farm Fire & Cas. Co.*, 117 Wash. App. 807, 814, 72 P.3d 1086 (2003). The insured bears the burden of proof on this issue. *GCG Assocs. LP v. Am. Cas. Co. of Reading Pennsylvania*, No. C07-792BHS, 2008 WL 3542620, at *5 (W.D. Wash. Aug. 8, 2008).

Here, Belmain has failed to meet its burden; it has not presented any evidence on the commencement of damages, much less proven an absence of material facts. To the contrary, the record indicates that condensation and water staining at the Property was evident to Belmain at least since 2001 (**Ex. 3**) and AIC did not provide coverage until

---

[32] Moreover, summary judgment is improper because Belmain has not shown (and cannot show on summary judgment) that decay was <u>not</u> the efficient proximate cause. This is a factual issue. *See Kish*, 125 Wash. 2d at 169 & n.1; *AXIS Surplus Ins. Co.*, 2009 WL 10676383, at *5. In any event, the law is clear that an insured is not afforded the benefit of estoppel by semantic games. *See Kish*, 125 Wash. 2d at 170 ("An insured may not avoid a contractual exclusion merely by affixing an additional label or separate characterization to the act or event causing the loss."); *Sunbreaker Condo. Ass'n*, 79 Wash. App. at 376 (insured not allowed to avoid a latent defects exclusion by attempting to label the flaw "negligent construction").

DEF.'S RESPONSE TO PL.'S MOTION FOR
PARTIAL SUMM. J. (No. 2:19-cv-00156-MJP) –
Page 23

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

2008 (*supra* § II.C). Moreover, Belmain's expert links claimed water intrusion back to the construction of the Property decades before AIC's coverage. *E.g.*, **Ex. 1** at 11. Therefore, even if a loss is "progressive," the evidence is it began before the Policies. Belmain is not entitled to summary judgment that all water intrusion is covered. *Dally Properties, LLC*, 2006 WL 1041932, at *2. The Motion must be denied for this reason too.

**H.    This Motion Is Premature and Cannot Resolve Whether Belmain Is Entitled to Coverage for Water Intrusion as a Matter of Law**

Belmain's Motion is predicated on the notion that the facts relevant to resolution of coverage here are frozen in time from the date of AIC's Denial Letter. This is not the law. *See Anderson*, 2015 WL 687399, at *10.[33] Now that Belmain has accused AIC of bad faith in denying coverage, AIC is entitled to a fulsome inquiry to meet AIC's attendant litigation burdens.

This Motion comes early in this litigation (*see* Dkt. 19), and significant discovery issues remain regarding evidence pertinent to AIC's defenses. **Ex. 5**. For example, as explained, evidence in the record indicates certain condensation and water staining was identified in or around 2001 and attributable to exposure predating that time. **Ex. 3**. If Belmain can gather further evidence relating to that 2001 investigation, which evidence has been requested but not yet been disclosed (*see* **Ex. 5**), AIC may show that all relevant water intrusion pre-dates the 2001 re-cladding. Isacke Decl. ¶¶ 3–4. The Court should allow for discovery into this issue and the other coverage defenses identified by AIC (*see, e.g.*, *supra* n.10) before resolving as a matter of law that Belmain is entitled to coverage "for any water intrusion damage at [Belmain]'s property." Fed. R. Civ. P. 56(d).

## VI. CONCLUSION

For the foregoing reasons, AIC respectfully requests that the Court deny Belmain's Motion for Partial Summary Judgment.

---

[33] The law requires that AIC engage in "reasonable" investigation before denying coverage. *Bosko v. Pitts & Still, Inc.*, 75 Wash. 2d 856, 864, 454 P.2d 229 (1969). "Reasonable" does not mean exhaustive in all regards; indeed, an "exhaustive" standard would be unduly burdensome on insurers and insureds alike.

DEF.'S RESPONSE TO PL.'S MOTION FOR
PARTIAL SUMM. J. (No. 2:19-cv-00156-MJP) –
Page 24

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1    DATED this 25th day of July, 2019.

2                                   McNAUL EBEL NAWROT & HELGREN PLLC

3                                   By: s/Curtis C. Isacke
                                        Robert M. Sulkin, WSBA No. 15425
4                                       Malaika M. Eaton, WSBA No. 32537
                                        Curtis C. Isacke, WSBA No. 49303
5
                                    600 University Street, Suite 2700
6                                   Seattle, Washington 98101
                                    (206) 467-1816
7                                   rsulkin@mcnaul.com
                                    meaton@mcnaul.com
8                                   cisacke@mcnaul.com

9                                   Attorneys for The American Insurance Company

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEF.'S RESPONSE TO PL.'S MOTION FOR
PARTIAL SUMM. J. (No. 2:19-cv-00156-MJP) –
Page 25

1

<u>CERTIFICATE OF SERVICE</u>

2
3
4

     I hereby certify that on July 25, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record who receives CM/ECF notifications.

5

     DATED this 25th day of July, 2019.

6
7

              By:   s/Curtis C. Isacke
                  Curtis C. Isacke, WSBA No. 49303

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

DEF.'S RESPONSE TO PL.'S MOTION FOR
PARTIAL SUMM. J. (No. 2:19-cv-00156-MJP) –
Page 26

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

4125-001 ig252v03x7 2019-07-25